IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:15-CR-20-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| DAVON KELLEY BENNETT | ) | |

This matter is before the Court on defendant's motion to suppress statement evidence. A hearing was held before the undersigned on March 23, 2016, at Raleigh, North Carolina. For the reasons discussed below, defendant's motion to suppress is denied.

## BACKGROUND

At 1:25 a.m. on March 4, 2015, the Pasquotank Sheriff's Office with FBI agents present executed a search warrant at defendant's home on Brothers Lane in Elizabeth City, North Carolina by forcibly entering the back door. Defendant was home with his minor son. The search of the house returned approximately 357 grams of marijuana, $91,470 plus $20 in counterfeit currency, and two stolen firearms. A subsequent search of vehicles located in defendant's yard pursuant to a separate search warrant returned three kilograms of cocaine, 798 grams of heroin, and $60,100.

A grand jury returned a three count indictment on October 15, 2015, charging defendant with conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine, 280 grams or more of cocaine base, 100 grams of heroin and a quantity of marijuana; possession with intent to distribute 500 grams or more of cocaine, 100 grams or more of heroin, and a quantity of marijuana; and possession of a firearm in furtherance of a drug trafficking crime. 21 U.S.C. § 841(a)(1); 18 U.S.C. § 924(c).

Defendant made three sets of statements to law enforcement officers which are the subject of this motion. While still at his home on Brothers Lane, defendant stated "Yeah, the weed is in the kitchen cabinet" and that the money was in the laundry hamper. While at the Pasquotank County Sheriff's Office in the hours following the execution of the search warrant, defendant stated "Man, ya'll should have come tomorrow, I was going to take all that money and buy a whole bunch of marijuana. I was going to go into that shed and go to work." Defendant also stated that defendant had not sold any "work" since Maurice Baum had been arrested and had just been selling marijuana.

## DISCUSSION

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The procedural safeguards of *Miranda* are required when a suspect is in custody and is subjected to either express interrogation or its functional equivalent. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980); *see also Miranda v. Arizona*, 384 U.S. 436, 478 (1966). Interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301; *see also United States v. Payne*, 954 F.2d 199, 202 (4th Cir. 1992). In determining whether a suspect was subject to interrogation, the focus is on the perception of the suspect not the police. *Id.* "Any statement given freely and voluntarily without any compelling influences is, of course, admissible." *Miranda*, 384 U.S. at 478. It is the

2

government's burden by a preponderance of the evidence to show that a defendant's statement was voluntary. *United States v. Braxton*, 112 F.3d 777, 781 (4th Cir. 1997).

The government concedes that defendant was in custody when he made each of the statements at issue. The parties also agree that defendant did not receive his *Miranda* warning until he was at the Pasquotank County Sheriff's Office, though there is some conflict in the evidence as to whether defendant's statements at the Sheriff's Office were made before or after defendant received his *Miranda* warning. The issue remains, however, whether any of the statements at issue were the product of interrogation or whether they were made freely and without compelling influence.

A. STATEMENTS MADE AT 1300 BROTHERS LANE

Investigator Williams testified at the hearing that upon law enforcement's entry into defendant's home defendant was in the kitchen. Defendant immediately submitted to Williams' authority and got on the ground. Williams handcuffed defendant and led him to the kitchen table. Williams read defendant the search warrant and explained to defendant what the attachments to the search warrant contained. Although there were a number of law enforcement officers who entered the home with their firearms drawn, by the time defendant and Williams were at the kitchen table the officers' weapons were no longer drawn. Williams testified that he did not ask defendant any questions and that he may have told defendant that it would be of benefit to him (defendant) to cooperate. Defendant then stated that "Yeah, the weed is in the kitchen cabinet."

The government has satisfied its burden to show that this statement was not the result of interrogation. First, the Court finds credible Williams' testimony that he did not ask defendant any questions prior to defendant's statement. Second, although Williams may have told

3

government's burden by a preponderance of the evidence to show that a defendant's statement was voluntary. *United States v. Braxton*, 112 F.3d 777, 781 (4th Cir. 1997).

The government concedes that defendant was in custody when he made each of the statements at issue. The parties also agree that defendant did not receive his *Miranda* warning until he was at the Pasquotank County Sheriff's Office, though there is some conflict in the evidence as to whether defendant's statements at the Sheriff's Office were made before or after defendant received his *Miranda* warning. The issue remains, however, whether any of the statements at issue were the product of interrogation or whether they were made freely and without compelling influence.

A. STATEMENTS MADE AT 1300 BROTHERS LANE

Investigator Williams testified at the hearing that upon law enforcement's entry into defendant's home defendant was in the kitchen. Defendant immediately submitted to Williams' authority and got on the ground. Williams handcuffed defendant and led him to the kitchen table. Williams read defendant the search warrant and explained to defendant what the attachments to the search warrant contained. Although there were a number of law enforcement officers who entered the home with their firearms drawn, by the time defendant and Williams were at the kitchen table the officers' weapons were no longer drawn. Williams testified that he did not ask defendant any questions and that he may have told defendant that it would be of benefit to him (defendant) to cooperate. Defendant then stated that "Yeah, the weed is in the kitchen cabinet."

The government has satisfied its burden to show that this statement was not the result of interrogation. First, the Court finds credible Williams' testimony that he did not ask defendant any questions prior to defendant's statement. Second, although Williams may have told

3

defendant that it would benefit him to cooperate, Williams' statement cannot "fairly be seen as expressing or even insinuating that he would help [defendant] bargain down his drug charges if only [defendant] cooperated." *United States v. Foster*, 166 Fed. App'x 13, 19 (4th Cir. 2006)(unpublished); *cf. United States v. Montana*, 958 F.2d 516, 518 (2d Cir. 1992) (agent's statement that any cooperation would be brought to the attention of the United State Attorney's office amounted to interrogation). There is no evidence that Williams discussed any particular benefit that might accrue if defendant cooperated. The testimony further supports that no other law enforcement officer asked defendant any questions or engaged in any interrogation prior to defendant's statement, and thus the Court holds that this statement was voluntary.

As defendant was being escorted from his home, he was stopped by FBI Agent Coats who testified that he wanted to introduce himself to defendant and to inform defendant that he was part of a larger federal investigation. Coats testified that he also told defendant that he hoped he would get defendant's cooperation. Coats testified that in response to that statement, defendant stated that he had been helpful and further stated that the money is in the laundry hamper. Coats testified that he did not ask defendant any questions and that defendant became very emotional. Coats testified on cross-examination that he did not go into any detail about cooperating and what that would entail.

The Court finds that Coats' statement about cooperation cannot in this context been found to have insinuated that defendant would receive a benefit in the future if he provided self-incriminating information. Indeed, Coats' statement did not seek or require a response, *Innis*, 446 U.S. at 301-02, nor did Coats engage in any actions which would be likely to elicit an incriminating response. *See e.g. United States v. Lovell*, 317 F. Supp. 2d 663, 669 (W.D. Va. 2004) (interrogation found where investigators showed suspect crucial piece of evidence but

4

instructed suspect not to say anything). For these reasons, the Court holds that defendant's statement about the location of money was voluntary.

B. STATEMENTS MADE AT PASQUOTANK SHERIFF'S OFFICE

Williams also testified that while he was attempting to gather biographical information from defendant in the processing room of the Pasquotank County Sheriff's Office, defendant spontaneously stated "Man, ya'll should have come tomorrow, I was going to take all that money and buy a whole bunch of marijuana. I was going to go into that shed and go to work." *See also* [DE 23-2]. Williams testified that he had only asked defendant routine booking questions, such as defendant's name, social security number, and date of birth, when defendant made the statement.

Routine booking questions to secure biographical data, unless they are designed to elicit incriminatory admissions, are not deemed to be interrogation for *Miranda* purposes. *U.S. v. D'Anjou*, 16 F.3d 604, 608 (4th Cir. 1994). There is no evidence which would suggest that Williams or anyone else asked defendant anything other than routine booking questions and thus the Court finds this statement to be voluntary.

Williams testified that within minutes of making the statement to Williams, defendant made another voluntary statement to Officer Winslow who was attempting to fingerprint defendant just a few feet away from the computer where Williams had been asking defendant biographical questions. Williams testified that he heard defendant to say that he (defendant) had not sold any "work" since Maurice Baum had been arrested, and that he (defendant) had just been selling marijuana. *See also* [DE 23-2]. Williams further testified that neither he nor Officer Winslow asked defendant any questions prior to his making the statement.

5

As above, there is no evidence which would indicate that defendant's statement were made in response to any questioning or any other behaviors designed to elicit incriminating information. The Court finds Williams' testimony to be credible and that this statement was also made voluntarily.

Finally, the Court heard testimony from FBI Agent Scherger that he attempted to interview defendant while at the Pasquotank County Sheriff's Office. Scherger testified that while he, Officer Winslow, and defendant were in an interview room, Scherger asked defendant if he would like any water or needed to use the bathroom. Scherger then explained to defendant who he (Scherger) was and notified defendant that he would be advising defendant of his rights. Scherger began to read the advisement of rights form to defendant, during which time defendant stated that "you all should have come by tomorrow, I was going to buy a whole bunch of weed." Scherger testified that he told defendant that they could talk about that but that he needed to continue to advise defendant of his rights. When Scherger advised defendant that he had the right to an attorney, defendant requested an attorney and the interview ceased.

There is again no evidence that defendant's statement was made in response to any questioning or behaviors designed to elicit an incriminating response. The Court finds the testimony of Scherger credible and holds that defendant's statement to him was voluntary.

## CONCLUSION

In light of the foregoing, defendant's motion to suppress statement evidence [DE 23] is DENIED.

SO ORDERED, this 28 day of March, 2016.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

6